COMMONWEALTH OF PENNSYLVA-NIA, DEPARTMENT OF ENVIRON-MENTAL RESOURCES Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION Respondent.

No. 88–3175.

United States Court of Appeals, Third Circuit.

Argued Sept. 27, 1988.

Decided Feb. 23, 1989.

---

Kurt J. Weist (argued), M. Dukes Pepper, Jr., Martin H. Sokolow, Jr., Com. of Pa., Dept. of Environmental Resources, Harrisburg, Pa., for petitioner.

Catherine C. Cook, General Counsel, Jerome M. Feit, Sol., Frank R. Lindh (argued), Samuel Soopper, F.E.R.C., Solicitor's Office, Washington, D.C., for respondent.

Before GIBBONS, Chief Judge, SEITZ, Circuit Judge, and POLLAK, District Judge [*].

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Petitioner, the Department of Environmental Resources of the Commonwealth of Pennsylvania ("D.E.R." or "the Department") petitions this court to set aside an order of the Federal Energy Regulatory Commission ("F.E.R.C." or "the Commission"), *Pennsylvania Hydroelectric Development Corporation*, 42 F.E.R.C. ¶ 61,070 (1988), denying D.E.R. rehearing in the case of Commission Project No. 9167. The Department asks that we either modify the underlying Order Issuing License for the New Kernsville Dam Project, *Pennsylvania Hydroelectric Development Corporation*, 36 F.E.R.C. ¶ 62,236 (1986), or direct F.E.R.C. to conduct a de novo review of the license application and/or an evidentiary hearing on the Department's requests for waiver of certain license requirements. We have jurisdiction under Section 313 of the Federal Power Act, 16 U.S.C. § 825*l* (1982).

### I.

This case concerns a license granted to the Pennsylvania Hydroelectric Development Corporation ("P.H.D.C.") to construct, operate and maintain a hydroelectric project on the New Kernsville Dam on the Schuylkill River in Berks County, Pennsylvania. The New Kernsville Dam was constructed in 1949 by the Commonwealth of Pennsylvania as part of the Schuylkill River Pollution Project. The dam, its reservoir, and contiguous lands and facilities are owned and maintained by the petitioner D.E.R.

On April 26, 1985, P.H.D.C. filed an application with the Commission for a license

---

[*] Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

to construct a "minor" water power project at the New Kernsville Dam.[1] P.H.D.C. supplemented that application on September 23, 1985. The proposed project would utilize an experimental design involving two floating, moored steel barges, one immediately upstream from the dam, the other immediately below the dam, connected by a 100–foot long, approximately seven-foot diameter steel penstock (a conduit) extending over the spillway of the dam. The upstream (or "intake") barge would support an intake structure connected to the penstock. The downstream (or "powerhouse") barge would support a turbine generator. The project would also include the excavation of a 140–foot long, 55–foot wide tailrace and the installation of a 6,000–foot long overhead transmission line.

P.H.D.C.'s application included a water quality certification issued by the Department in 1981, pursuant to the Clean Water Act § 401(a), 33 U.S.C. § 1341 (1982), originally issued in relation to a 1981 application by P.H.D.C. for a license for a similar proposed project on the New Kernsville Dam. In October, 1985, the Department informed the Commission that, although there might be "cumulative impacts" from a series of hydroelectric projects along the Schuylkill "we feel the applicant has adequately addressed these concerns by proposing to monitor and maintain dissolved oxygen levels." In late 1985, the Department and P.H.D.C. entered into lease negotiations concerning the real property and water rights necessary for the project. Most of the Department's technical concerns about the project were resolved during these negotiations.

In November, 1985, the Commission issued notice of application, indicating that comments and interventions should be filed by January 17, 1986. The Department did not intervene before that deadline. On April 10, 1986, the Commission issued a notice stating that it had completed an environmental assessment for the New Kernsville Dam Project, and that, as required by the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4331, 4335 (1982), it found "no significant impact" on the quality of the human environment.

On May 12, 1986, the Department filed a motion for late intervention, pursuant to 18 C.F.R. § 385.214 (1988). The Department argued that certain "assumptions" in the environmental assessment conflicted with "the requirements necessary to carry out DER's statutory and regulatory duties." It argued that "[a]lthough DER supports the installation of a hydroelectric facility at Kernsville Dam," the Department's "statutory and regulatory requirements mandate intervention at this time to assure input into the licensing process."

On August 22, 1986, the Commission issued an order granting the Department's request for intervention. Six days later, on August 28, the Director of F.E.R.C.'s Office of Hydropower Licensing, pursuant to a delegation of authority to him by the Commission, 18 C.F.R. § 375.314(q)(2)(i) (1988), entered an order issuing P.H.D.C. a 40–year license for the New Kernsville Dam project. *Pennsylvania Hydroelectric Development Corporation*, 36 F.E.R. C. ¶ 62,236 (1986).

The license was issued subject to 17 standard articles contained in F.E.R.C.'s Form L–15, "Terms and Conditions of License for Unconstructed Minor Project Affecting the Interests of Interstate or Foreign Commerce."[2] The license also contained 14

---

**1.** Commission regulations define a minor water power project as one with a total installed generation capacity of 2,000 horsepower (1.5 megawatts) or less. 18 C.F.R. § 4.30(b)(17) (1988). The proposed New Kernsville Dam Project with a rated generation capacity of 630 kilowatts falls within the regulatory definition.

**2.** These included articles concerning changes in the plans and specifications for the project (Article 2), construction of the project (Article 3), Commission inspection of the construction, operation and maintenance of the project (Article 4), a requirement that the licensee acquire title in fee or the right to use in perpetuity all land necessary or appropriate for construction, operation and maintenance of the project (Article 5), installation of gages and stream-gaging stations (Article 6), authority of the Commission to order installation of additional capacity (Article 7), authority of the Commission to order coordination with other projects or power systems (Article 8), Commission rules and regulations controlling storage and discharge of water (Arti-

additional articles set forth in the order issuing the license.[3]

The Department filed with the Commission a petition for appeal from the Director's order pursuant to 18 C.F.R. § 385.1902 (1988). While the Department's counsel stated in a cover letter that "the Commonwealth of Pennsylvania, Department of Environmental Resources supports the development of this project," in the petition the Department objected to most of the license articles.[4] The Department argued that these articles interfered with its property and its mandate under Pennsylvania law to regulate Commonwealth lands and waters. It contended that because these conditions would "apply to and affect the Department's property and resources, the Department's review and approval must be required rather than the Commission's." The Department urged the Commission to waive the conditions pursuant to its authority under Section 10(i) of the Federal Power Act, 16 U.S.C. § 803(i) (1982). In addition, the Department argued that the license provisions it challenged were beyond the Commission's authority to impose under the Federal Power Act.

On September 18, 1987, F.E.R.C. issued an order denying the Department's petition for appeal. *Pennsylvania Hydroelectric Development Corporation,* 40 F.E.R.C. ¶ 61,282 (1987). The Department filed a petition for rehearing before the Commission under Section 313(a) of the Federal Power Act, 16 U.S.C. § 825*l*(a), and 18 C.F.R. § 385.713 (1988). In addition to the contentions already made in its petition for appeal, the Department now argued for the first time that the Director lacked authority to issue the license, that the Commission had not granted the Department an adequate opportunity to be heard, and that the Commission had erred in failing to apply the provisions of the Electric Consumer Protection Act of 1986, P.L. 99–495, 100 Stat. 1243 (1986). The Commission denied the Department's petition for rehearing, *Pennsylvania Hydroelectric Development Corporation,* 42 F.E.R.C. ¶ 61,070 (1988), and the Department has sought judicial review in this court.

We review these agency actions to determine whether they exceed the Commission's authority or are arbitrary, capricious, an abuse of discretion, or not in accordance with law. 5 U.S.C. § 706(2) (1982). As to factual matters, the findings of the Commission are conclusive if supported by substantial evidence. 16 U.S.C. § 825*l*(b).

## II.

■ The Commission first challenges our jurisdiction to hear some of the Depart-

---

cle 9), Commission authority to order reasonable use of the project by others (Article 10), compliance with Commission orders concerning conservation (Article 11), construction of fish and wildlife facilities by the United States (Article 12), public access to the project (Article 13), pollution (Article 14), conditions for surrender of the license (Article 16), and termination of rights over waters under United States jurisdiction at the end of the license period (Article 17).

3. These articles covered reimbursement to the United States for the cost of administration (Article 201), clearing of lands (Article 202), date of commencement of construction (Article 301), submission of and approval by the Commission of a final design and design report prior to commencement of construction (Article 302), filing of the final design (Article 303), design of cofferdams and deep excavations (Article 304), filing of exhibits to show project as built (Article 305), installation and maintenance of dissolved oxygen monitoring equipment and Commission oversight of compliance with Commonwealth environmental standards (Article 401), continuous minimum flow (Article 402), operation of the project in run-of-river mode (Article 403), development of a study plan to assess fish entrainment (Article 404), development of a recreation plan (Article 405), consultation with the Pennsylvania State Historic Preservation Officer prior to future construction (Article 406), and licensee rights to grant permission for various uses of the project lands and waters and to convey certain interests in project lands without Commission approval (Article 407).

4. The Department objected specifically to all the articles described in footnotes two and three, supra, except those dealing with termination of rights over waters under United States jurisdiction at the end of the license period (Article 17), reimbursement to the United States for the cost of administration (Article 201), date of commencement of construction (Article 301), filing of the final design (Article 303), and consultation with the Pennsylvania State Historic Preservation Officer prior to future construction (Article 406).

ment's contentions. Each of the objections put forward by the Department was presented first to the Commission in an application for rehearing, in apparent conformity with the requirements of the Federal Power Act Section 313(b), 16 U.S.C. § 825*l* (b), which reads in relevant part "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." Respondent F.E.R.C. contends that the Department has failed to comply with the statute because some of its arguments were raised for the first time in its petition for rehearing. The Commission does not argue that "new" arguments may not be raised in a petition for rehearing before the Commission. Rather, it contends that because the Department did not seek additional rehearing of such arguments before the Commission, this court cannot hear these arguments.

We decline to conclude that the intent of Congress in enacting § 313(b) was necessarily to afford the Commission two opportunities to consider each argument. The routine and perhaps desirable practice may be, as the Commission suggests, for a party to seek rehearing on an issue raised for the first time in a petition for rehearing. However, the Commission has failed to point to any statute, rule or decision of the Commission to support the proposition that such second petition is required. We find that the procedure followed by the Department here is in compliance with the plain language of the statute. Thus we have jurisdiction to consider all the Department's arguments under 16 U.S.C. § 825*l* (b).

## III.

■ The Department argues first that the Director of the Office of Hydropower Licensing lacked authority to issue to P.H.D.C. the license for the New Kernsville Dam Project. The Commission has promulgated regulations authorizing the Director

to "[t]ake appropriate action on ... uncontested applications for ... [m]inor water power project licenses." 18 C.F.R. § 375.314(q)(2)(i). F.E.R.C. regulations define "uncontested" to mean "that no motion to intervene, or notice of intervention, in opposition to the pending matter made under [18 C.F.R.] § 385.214 (intervention) has been received by the Commission." 18 C.F.R. § 375.301(c) (1988). The Department maintains that its motion to intervene —filed several months before the Director's Order Issuing License—was "in opposition to the pending matter" within the meaning of the regulation, that the P.H.D.C.'s regulation was therefore not "uncontested," and that the Director thus had no authority to issue the license for the project.

In its Order Denying Rehearing, *Pennsylvania Hydroelectric Development Corporation*, 42 F.E.R.C. ¶ 61,070, the Commission interpreted 18 C.F.R. § 375.301(c) to mean that only interventions that do not state support for a project will be considered "in opposition." Because the Department's motion to intervene expressed support for this project, the Commission found the Director's action in issuing the license to be within his authority.

While our interpretation of the regulation might not have been so rigid were we members of the Commission, an agency interpretation of its own regulation is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *see also Mullins Coal Co. v. Director*, 484 U.S. 135, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987). Given the reasons included by the Department in its motion to intervene, the Commission's interpretation is not inconsistent with the regulation. Nor is it inconsistent with any "prior agency decision[ ]," *Northern Indiana Public Service Co. v. Walton League*, 423 U.S. 12, 14, 96 S.Ct. 172, 173, 46 L.Ed.2d 156 (1975) (per curiam), to which the Department has directed our attention.[5] We conclude that

5. The one example of a motion to intervene on which the petitioner does rely was that in the

Flat Rock Dam Project, No. 2803. This motion, which the Commission treated as "in opposi-

the Director was acting within the authority delegated to him when he issued the License for Project No. 9167 on August 28, 1986.

## IV.

The Department next argues that the Commission erred in failing to apply the provisions of the Electric Consumers Protection Act of 1986 ("E.C.P.A."), Pub.L. No. 99–495, 100 Stat. 1243 (1986) (codified at various sections of 16 U.S.C. §§ 791a–824j (Supp. IV 1986)), to the licensing decision on the New Kernsville Dam Project. The Commission first contends that we lack jurisdiction to hear this claim because it was made only cursorily in the Department's petition for rehearing before the Commission. Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), provides that we will consider only objections "urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." Given our conclusion on the merits of this claim, we will assume the objection to FERC's failure to consider the E.C.P.A. in issuing the license was "urged before the Commission" with sufficient specificity to comply with the statute.

■ The E.C.P.A., by its terms, applies only to licenses issued on or after its date of enactment, October 16, 1986. E.C.P.A. § 18, 16 U.S.C. § 797 note (Supp. IV 1986). Because of our conclusion that the license for the New Kernsville Dam Project was validly issued on August 28, 1986—almost two months before the E.C.P.A.'s date of enactment—petitioner's argument fails.

## V.

Next, the Department challenges the decision of the Commission not to waive certain license articles that were incorporated

in the New Kernsville Dam Project license. The Commission promulgates license articles pursuant to—and containing terms specified by—the various substantive provisions of the Federal Power Act, 16 U.S.C. § 791a, *et seq.* In addition, Section 10(g) of the Act authorizes the Commission to issue licenses on "[s]uch other conditions not inconsistent with the provisions of this chapter as the Commission may require." 16 U.S.C. § 803(g).

Section 10(i) of the Federal Power Act states that "[i]n issuing licenses for a [minor project] ... the Commission may in its discretion waive such conditions, provisions, and requirements of this subchapter ... as it may deem to be to the public interest to waive under the circumstances." 16 U.S.C. § 803(i). The Department challenges the Commission's decision not to waive any of the challenged conditions incorporated in the license.[6] Its argument has essentially three components. First the Department urges that the challenged articles are beyond the Commission's authority to promulgate. Second, it argues that the record before the Commission was inadequate. Finally, it argues that the decision of the Commission not to waive the license articles must itself be reversed.

### A.

■ As a threshold matter, we must address the Department's contention that certain articles in this license are beyond the Commission's statutory post-licensing regulatory authority. We conclude that the challenged license articles are within F.E.R.C.'s authority under the Federal Power Act. F.E.R.C.'s authority to regulate projects it has licensed through requiring compliance with license conditions is beyond question, *see, e.g.,* Federal Power Act § 10(g), 16 U.S.C. § 803(g). As this court long ago held, Congress intended by Sec-

tion," did not affirmatively express support for the project. Thus, the Commission's action in No. 2803 is entirely consistent with the Commission's interpretation of the regulation in this case.

**6.** The Commission characterized the Department's waiver request as "seek[ing] ... in essence waiver of such fundamental [Federal

Power Act] provisions as Section 10(a)(1) (comprehensive development); the safety and adequacy provisions of 10(c); 13 (construction deadlines); 18 (fishway prescriptions); and 21 (federal eminent domain authority)." *Pennsylvania Hydroelectric Development Corporation,* 40 F.E.R.C. ¶ 61,282, p. 61,915 n. 5 (1987).

tion 10(g) "to give the Commission wide latitude and discretion in the performance of its licensing and regulatory functions." *Metropolitan Edison Co. v. F.P.C.,* 169 F.2d 719, 723 (3d Cir.1948). All the challenged articles are within F.E.R.C.'s mandate.

■ In addition, we disagree with the Department's contention that the license articles intrude impermissibly on areas assigned by Congress to state control. The Federal Power Act does not permit interference with certain state laws relating "to the control, appropriation, use or distribution of water in irrigation or for municipal or other uses of the same nature." *First Iowa Hydro–Electric Coop. v. F.P.C.,* 328 U.S. 152, 175–76, 66 S.Ct. 906, 917, 90 L.Ed. 1143 (1946); *See* Federal Power Act § 27, 16 U.S.C. § 821. However, the state law provisions relating to pollution, 32 Pa.Stat. Ann. § 751.1 (Purdon 1967), flood control, *id.,* aesthetics and recreation, 32 Pa.Stat. Ann. § 820.22 (Purdon Supp.1988), and natural resource conservation, 35 Pa.Stat.Ann. §§ 691.4, 691.5 (Purdon 1977); 71 Pa.Stat. Ann. §§ 510–1(20), 510–4 (Purdon Supp. 1988); Pa. Const. Art. 1, § 27 (Purdon Supp.1987), that P.H.D.C.'s license affects, do not fall within this narrow class.

Nor is license Article 401—requiring Commission review and approval of project modifications intended to maintain the state water quality standard—an impermissible intrusion on state certification authority under Section 401 of the Clean Water Act, 33 U.S.C. § 1341. That provision gives states exclusive authority only to issue a certification, prior to licensing, that any discharge into navigable waters will comply with 33 U.S.C. §§ 1311, 1312, 1313, 1316, and 1317. Indeed, the Department has already issued such certification in this case.

### B.

The Department next argues that the record before the Commission was not ade-

quate to permit it to decide whether or not to waive the challenged license articles, and that the cause should be remanded to the Commission to reopen the record. The Department also requests that on remand we order an evidentiary hearing as permitted by the Federal Power Act § 313(b), 16 U.S. C. § 825*l* (b), in order to develop the factual record.[7]

The issue before the Commission was whether waiver of any of the license conditions would be "to the public interest." Federal Power Act § 10(i), 16 U.S.C. § 803(i). The Commission must undertake consideration of all relevant issues in making this decision. *See, e.g., Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Udall v. F.P.C.,* 387 U.S. 428, 450, 87 S.Ct. 1712, 1724, 18 L.Ed.2d 869 (1967).

The Department argues that a waiver is in the public interest on essentially two grounds. First, the Department complains that certain specified license articles supplant state regulation with regulation by the Commission, or divest the Commonwealth of control over the disposition of its resources. Some of the articles challenged on this ground require P.H.D.C. to comply with state law to the satisfaction of the Commission and not the Department. Others give F.E.R.C. final say in project alterations affecting environmental resources or areas in which the Department would otherwise have regulatory authority. Second, the Department objects to license articles that require P.H.D.C. to acquire rights to project properties currently owned by the Department, and that impose limitations on P.H.D.C.'s use and occupancy of those properties.

■ We conclude that the Commission adequately considered all factors relevant to the Department's requests for waiver. The Commission's analysis is sufficient to preclude a conclusion that this agency action is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). *See*

**7.** Section 313(b), 16 U.S.C. § 825*l* (b) reads in relevant part: "If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *cf., Udall v. F.P.C.,* 387 U.S. 428, 87 S.Ct. 1712, 18 L.Ed.2d 869 (1967).

The question before the Commission was essentially whether placing regulatory authority over this project with F.E.R.C. rather than the state agency was in the public interest. The analysis contained in the Commission's order demonstrates adequate consideration of this issue. The Commission stated that "[t]he detailed provisions of the [Federal Power Act] providing for comprehensive development of national resources leave no room for conflicting state controls. *First Iowa Hydro-Electric Coop. v. FPC,* 328 U.S. 152, 181, 66 S.Ct. 906, 910, 90 L.Ed. 1143 (1946).... Granting DER's request that we simply waive the substance of the federal regulatory framework ... would constitute an impermissible abrogation of our fundamental licensing responsibilities." *Pennsylvania Hydroelectric Development Corporation,* 40 F.E.R.C. ¶ 61,282, p. 61,914 (1987). The foregoing analysis demonstrates adequate consideration of the effects of the licensing decision on the state's regulatory scheme and property rights. *Cf. First Iowa,* 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143.[8]

The Department also argues that the Commission was required to develop a more complete factual record before making its determination. In this regard, the Department submits a list of factual questions that might be answered at an evidentiary hearing.[9] However, these questions are irrelevant to the question whether federal regulation is in the public interest, going rather to the merits of the federal regulatory scheme created by the Federal Power Act. Thus, not only is the record adequate, but, because additional evidence would not be "material" within the meaning of Section 313(b) of the Act, 16 U.S.C. § 825*l* (b), the Department cannot rely upon the statute as a basis for this court to grant it leave to adduce additional evidence before the Commission.[10]

### C.

We are faced, finally, with the Department's contention that the Commission's denial of the Department's waiver requests must itself be reversed. The Commission is empowered to waive license conditions "in its discretion." Federal Power Act § 10(i), 16 U.S.C. § 803(i). Consequently, the standard of review we apply is whether the Commission's decision to deny the Department's waiver requests was an abuse of this discretion.

We conclude that the Commission has not abused its discretion. The Department asks in essence that fundamental aspects of the federal regulatory scheme be waived in favor of state control. The balance between state and federal regulation, however, was struck in favor of federal control in the Federal Power Act. As the Supreme Court has observed, "[t]he detailed provisions of the Act providing for the federal plan of regulation leave no room or need · for conflicting state controls." *First Iowa,* 328 U.S. at 181, 66 S.Ct. at 920.

Consequently, the claim that failure to defer to the rights of the Commonwealth of Pennsylvania—either as state regulatory

---

**8.** We also find without merit the Department's argument, raised for the first time in its Reply Brief, that the Commission's action is infirm because of an alleged absence of a "comprehensive plan for improving or developing" the waterway, 16 U.S.C. § 803(a), or because the record is inadequate to permit review of the alleged decision of the Commission not to prepare such a plan. *Cf., National Wildlife Federation v. F.E.R.C.,* 801 F.2d 1505 (9th Cir.1986).

**9.** "a. Must PHDC presently acquire either title in fee to the project properties or a right to use them in perpetuity for FERC to be able to fulfill its asserted regulatory duties?

"b. Can the Department and PHDC actually negotiate a lease agreement that is consistent with the license and that will prevent or resolve dangerous conditions at the site?

"c. Are each of the many powers over the project properties conferred upon PHDC and FERC by Article 407 of the license necessary to fulfill the purposes of this project?

"d. Is the Department better suited or better able than FERC to regulate particular aspects of the project effectively?"

**10.** Given our conclusion, there is no merit to the Department's contention that an evidentiary hearing before the Commission is required to provide it due process.

**600**

authority or as landowner—constitutes an abuse of discretion is patently untenable. It is both unremarkable and within the Commission's discretion to conclude that the factors that necessitate federal control—and that underlay passage of the Federal Power Act in the first place—were indeed present in this particular case. As the Commission said "[a] licensee must have sufficient control over project works and lands to enable the Commission, through its licensee, to carry out its regulatory responsibilities with respect to the project." *Pennsylvania Hydroelectric Development Corporation,* 40 F.E.R.C. ¶ 61,282, p. 61,914 (1987).

Although the Commonwealth and its Department may not like the consequences of federal regulation, it is not an abuse of discretion for the Commission to refuse to waive requirements essential to the federal regulatory scheme.[11]

The petition for review will be denied.

---

11. Because of our conclusion that it was not an abuse of discretion to decline to waive the challenged license conditions in these circumstances, we need not address the Commission's suggestion that it lacks authority to waive license conditions that implement federal rather than state regulation of hydroelectric power.